UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ANNIE MAY LEONARD | : | |
| | : | |
| v. | : | C.A. No. 15-155S |
| | : | |
| CAROLYN COLVIN, Acting | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on April 20, 2015 seeking to reverse the decision of the Commissioner.  On December 29, 2015, Plaintiff filed a Motion to Reverse the Defendant's Final Decision.  (Document No. 21).  On February 18, 2016, the Commissioner filed a Motion for an Order Affirming the Decision of the  Commissioner.  (Document No. 23).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that Plaintiff's Motion (Document No. 21) be DENIED and that the Commissioner's Motion (Document No. 23) be GRANTED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for DIB (Tr. 153-156) and SSI (Tr. 157-165) on August 8, 2012 alleging disability since September 19, 2009.[1]  (Tr. 157).  The Applications were denied initially on October 15, 2012 (Tr. 58-68, 69-79) and on reconsideration on March 6, 2013.  (Tr. 82-93, 94-105).  Plaintiff requested an Administrative Hearing.  On December 16, 2013, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  (Tr. 30-57).  The ALJ issued an unfavorable decision to Plaintiff on December 6, 2013.  (Tr. 10-25).  The Appeals Council denied Plaintiff's request for review on March 24, 2015.  (Tr. 1-3).  Therefore the ALJ's decision became final.  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ made multiple errors in the evaluation of her mental health including misinterpreting medical evidence and reaching an impermissible lay opinion.  She also claims that the ALJ erred by favoring the opinions of the non-examining medical consultants over her treating providers.  Finally, she alleges that the ALJ erred at Step 2 by not finding her asthma to be a severe impairment.

The Commissioner disputes Plaintiff's claims and contends that the ALJ properly considered the medical evidence of record and did not impermissibly reach a lay opinion regarding medical evidence.  Finally, the Commissioner disputes Plaintiff's claim of a Step 2 error and argues that, even if error was conceded, it is harmless on this record.

---

[1]  At the hearing held before the ALJ on December 16, 2013, Plaintiff amended her disability onset date to September 28, 2011.  (Tr. 34).

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  <u>See</u> <u>Jackson v. Chater</u>, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  <u>Id.</u>  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  <u>Id.</u> The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  <u>Id.</u>

### IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  <u>See</u> <u>Rohrberg v. Apfel</u>, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).   In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was thirty-five years old on the date of the ALJ's decision.  (Tr. 36).  Plaintiff has a high school education with some college, but no degree (Tr. 37) and worked in the relevant past as a CNA before sustaining a workplace injury in September 2009.  (Tr. 53).  Plaintiff last worked on September 19, 2009.  (Tr. 180).  Plaintiff alleges disability due to obesity, chronic asthma, back injury, anxiety, affective disorder and other psychological issues.  (Document No. 21-1 at pp. 2-3).

On November 4, 2009, Plaintiff presented to Dr. Howard Hirsch with complaints of low back pain following a workplace injury. (Tr. 238). Physical examination revealed Plaintiff walked normally, and her back had a normal external appearance and no direct tenderness. Id. Dr. Hirsch noted mild restriction to Plaintiff's lumbar range of motion and ordered an MRI. Id. A November 30, 2009 MRI examination revealed a small lateral disc protrusion at L4-L5 and central disc protrusion at L5-S1. (Tr. 236-237). On December 2, 2009, Plaintiff again presented to Dr. Hirsch and reported mild improvement in her low back pain. (Tr. 239). Dr. Hirsch indicated Plaintiff was approaching maximum medical improvement, she had no findings suggesting the need for further intervention, and she had no disability. Id. On December 10, 2009, Plaintiff arrived at the Emergency Department of Rhode Island Hospital complaining of increased low back pain. (Tr. 245-246). She was diagnosed with acute low back pain and discharged the same day in stable condition. (Tr. 246).

On March 3, 2010, Plaintiff reported to Dr. Randall Updegrove at University Orthopedics complaining of left-side, low back pain. (Tr. 324). Dr. Updegrove observed Plaintiff displayed no swelling, deformity or discolorations of the low or mid-back. (Tr. 325). Plaintiff had marked tenderness to palpation in the area of the left SI joint and positive left-side Gaenslen's and Patrick's tests. Id. However, x-rays taken that same day revealed no SI joint abnormalities, and Plaintiff's mid-back was within normal limits. Id. Dr. Updegrove's impression was work-related mechanical low back pain, probable SI joint dysfunction and possible early chronic pain syndrome. Id. Dr. Updegrove recommended physical therapy, ambulation and possible SI injections if Plaintiff's pain did not improve. Id. By April 2010, Plaintiff was participating in physical therapy and reported no substantial changes. (Tr. 320). In May 2010, Dr. Updegrove noted Plaintiff's low-back pain was

slowly improving, and in June 2010, he noted Plaintiff could lift up to thirty pounds and had completed her physical therapy program.  (Tr. 316, 318).  Dr. Updegrove encouraged Plaintiff to continue with home exercise and to return to work in a limited fashion.  (Tr. 316).  In July 2012, Dr. Updegrove advised Plaintiff to seek injections if her pain persisted, but she expressed no interest in pursuing this course of treatment.  (Tr. 312).

In October 2010, Plaintiff was again seen at the Emergency Department of Rhode Island Hospital after falling down a flight of stairs.  (Tr. 260).  A CT scan of her lumbosacral spine revealed the bones, joints and alignment of the lumbar spine were all normal for her age.  (Tr. 254).  No acute fractures or malalignments were noted.  Id.  The exam did reveal a probable bone island within the L5 vertebral body.  Id.  On the same day, a CT scan of Plaintiff's cervical spine revealed the bones, joints and alignment of the cervical spine were all normal, and no fractures or abnormalities of the paraspinal soft tissues were present.  (Tr. 255-256).  Plaintiff also underwent radiographs of the thoracic and lumbar spines at this time.  (Tr. 257).  Both revealed normal mineralization and alignment, vertebral body height and disc space height were preserved, there were no fractures or osseous lesions, and the paravertebral tissues were normal.  Id.  Plaintiff was discharged in good/stable condition.  (Tr. 285).

On December 22, 2010, Plaintiff again saw Dr. Updegrove complaining of low back pain.  (Tr. 303).  Dr. Updegrove explained to Plaintiff that her objective testing, which showed nonspecific degenerative changes in her low back, did not correlate with the anticipated duration of her symptoms.  Id.  Dr. Updegrove informed Plaintiff of her options including being placed on maximum medical improvement ("MMI"), a referral for injections or continued chiropractic care.  Id.  Dr. Updegrove also noted he fully anticipated placing Plaintiff on MMI following the results of

-13-

a functional capacity evaluation ("FCE").  (Tr. 304).  In January 2011, Plaintiff's FCE showed no measurable increase in function, and she indicated to Dr. Updegrove that she reconsidered undergoing injections.  (Tr. 302).  Dr. Updegrove referred her for this treatment and delayed placing her on MMI pending the outcome of the injection treatments.  Id.

On August 17, 2011, Plaintiff was evaluated for injections by Dr. Stuart Schneiderman.  (Tr. 327-329).  Dr. Schneiderman's physical examination showed Plaintiff had a normal gait and was able to walk without assistance, straight leg raises were negative, her motor examination was 5/5 in both lower extremities and deep tendon reflexes were within normal limits.  (Tr. 327-328).  Dr. Schneiderman assessed degenerative disc disease, SI joint dysfunction and lumbar facet joint syndrome.  (Tr. 329).  He recommended SI and lumbar facet joint injections, advised against bed rest and advised Plaintiff to maintain normal activity as tolerated.  Id.

On August 22, 2013, Plaintiff's then primary care physician, Dr. Kimberly Zeller, completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) form (the "Physical RFC form").  (Tr. 470-477).  On the Physical RFC form, Dr. Zeller indicated Plaintiff could occasionally lift and carry up to ten pounds but never more.  (Tr. 470).  Dr. Zeller did not respond when asked to identify the "particular medical or clinical findings" supporting her assessment.  Id. Dr. Zeller also opined Plaintiff could sit for fifteen minutes, stand for ten minutes, and walk for ten minutes at one time; and sit, stand, or walk in combination for one hour at a time.  (Tr. 471).  Dr. Zeller indicated she did not know if Plaintiff used a cane and again did not indicate the medical or clinical support for her assessment of Plaintiff's limitations.  Id.  Dr. Zeller also assessed right- and left-hand limitations citing Plaintiff's edema in her legs and difficulty with mobility.  (Tr. 472).  Dr. Zeller opined Plaintiff could occasionally operate foot controls with her right foot and never with

-14-

her left foot. Id.  With respect to postural limitations, Dr. Zeller opined Plaintiff could occasionally balance, but never climb stairs, ramps, ladders, or scaffolds; and never stoop, kneel, crouch, or crawl – she did not provide the medical or clinical findings supporting these limitations.  (Tr. 473).  Dr. Zeller went on to opine that Plaintiff could never be exposed to unprotected heights or moving mechanical parts; could only occasionally be exposed to operating a motor vehicle, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold or heat, vibrations, and unidentified "other" conditions; and could only work in a quiet (i.e., library) environment.  (Tr. 474).  Yet again, Dr. Zeller did not provide medical or clinical findings supporting her limitations.  Id.  Dr. Zeller further indicated Plaintiff could not walk a block at a reasonable pace on an uneven surface, use public transportation or climb a few steps using a handrail.  (Tr. 474).  Finally, Dr. Zeller opined Plaintiff "suffers from debilitating depression" and agoraphobia.  Id.

On July 2, 2012, Plaintiff underwent an initial psychiatric evaluation with Dr. Gerardo Andriulli.  (Tr. 423-424).  Plaintiff presented with recurrent depression and panic attacks.  (Tr. 423).  Dr. Andriulli's mental status exam revealed Plaintiff was logical, coherent and goal oriented.  (Tr. 424).  She had no perceptual abnormalities and no mood congruent delusions.  Id.  Plaintiff was anxious in both her mood and affect, but she denied suicidal or homicidal idea, intent or plan; was oriented times three, showed no cognitive defects, and had good insight, judgment and impulse control.  Id.  Dr. Andriulli assessed a Global Assessment of Functioning ("GAF") score of 50 and noted Plaintiff's symptoms were escalating to a significant degree and would "grossly impair her ability to find employment...."  Id.

On July 30, 2012, Plaintiff again reported to Dr. Andriulli for a medication review.  (Tr. 425).  At that time, she was logical, coherent and goal oriented.  Id.  She was still experiencing

auditory hallucinations and racing thoughts, but she had good insight and judgment.   During a medication review on August 27, 2012, Dr. Andriulli noted Plaintiff's auditory hallucinations seemed in better control despite persisting problems with Plaintiff's mood.  (Tr. 426).   Still, she showed no gross cognitive deficits and reported no new problems. Id.  On September 24, 2012, Plaintiff reported better control over her anxiety and her auditory hallucinations had almost resolved. (Tr. 430).   She was logical, coherent and goal oriented; she showed no cognitive deficits; and she had good insight and judgment.  Id.   On November 19, 2012, Plaintiff reported for a medication review with Dr. Andriulli who noted she reported no new problems, and most of her symptoms were under control except for some resurfacing anxiety.   (Tr. 429).   At that time, Plaintiff denied psychotic symptoms, her thought processes were organized and goal oriented, she was alert and oriented times three, and her speech was clear, coherent, productive, spontaneous and goal directed. Id.

On June 29, 2010, Plaintiff reported to Dr. Joseph Grillo complaining of trouble breathing. (Tr. 478-479).  Plaintiff presented with shortness of breath, chest tightness and cough.  (Tr. 478). However, upon examination, Plaintiff's lungs were clear to auscultation and percussion.  Id.

Plaintiff was diagnosed with acute asthma exacerbation and bronchitis.  (Tr. 478-479).   On September 28, 2011, Plaintiff underwent pulmonary functioning testing.  (Tr. 485).   Although her one-second forced expiratory volume ("FEVi") measure was 30% of predicted, the test was not based upon an acceptable maneuver.  Id.  On August 19, 2012, Plaintiff again underwent pulmonary function testing.  (Tr. 493).  This time, her FEVi was 32% of predicted but, again, the test was not based upon an acceptable maneuver.  Id.  In general, Plaintiff's asthma has been controlled with

nebulizer treatments, an inhaler and nasal spray. (Tr. 444, 479). She has not required asthma-related hospitalization since at least 2011. (Tr. 42).

## A.      The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's anxiety disorder, affective disorder, back disorder and obesity were "severe" impairments as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 15). He found Plaintiff's asthma to be a non-severe impairment. (Tr. 16). As to RFC, the ALJ determined that Plaintiff could perform a limited range of light work subject to certain specified postural and non-exertional limitations. (Tr. 17). At Step 4, the ALJ concluded that Plaintiff could not return to her past work as a nursing assistant. (Tr. 23). However, at Step 5, the ALJ ruled that Plaintiff was not disabled because she could make a successful vocational adjustment to other unskilled light positions available in the economy. (Tr. 24).[2]

## B.      Plaintiff Has Shown No Error in the ALJ's Evaluation of the Medical Evidence

Plaintiff first faults the ALJ for not discussing all of Dr. Andriulli's treatment notes in his decision. Dr. Andriulli was a treating psychologist who saw Plaintiff on a few occasions in 2012 and early 2013. The ALJ undisputably discusses, and accurately reviews, in great detail notes from Dr. Andriulli's initial evaluation of Plaintiff on July 2, 2012 and a subsequent appointment on November 26, 2012. (Tr. 19).

Although Plaintiff contends that it was "imperative" that the ALJ review all of Dr. Andriulli's notes because they contain "vital proof of the Plaintiff's claim," she does not specifically

---

[2] The ALJ made an alternative finding that, even if Plaintiff's asthma was found to be a severe impairment at Step 2, and appropriate environmental limitations included in her RFC, she would still be able to perform a sufficient number of jobs to not be considered disabled. (Tr. 24).

discuss this evidence or how it might have satisfied her Step 3 burden or shown that the ALJ should have imposed even more significant limitations in his RFC finding.  (Document No. 21-1 at pp. 8-9). In addition, the ALJ is not required to discuss every piece of evidence in the record as it would be impractical to do so.  See, e.g., Coggon v. Barnhart, 354 F. Supp. 2d 40, 55 (D. Mass. 2005).  In sum, Plaintiff's argument is conclusory and does not warrant reversal.  The ALJ was not required to discuss each of Dr. Andriulli's treatment notes, and Plaintiff has made no showing as to how such records would mandate a disability finding.

Plaintiff also argues that the ALJ improperly rendered a medical opinion in his discussion of Dr. Andriulli's treatment when he concluded:

> Furthermore, East Bay Center Records show the claimant was discharged on June 27, 2013 secondary to her dropping out (Exhibit 16F); which seems to indicate the claimant did not feel her mental health problems were of the severity as to continue with counseling and treatment.

(Tr. 22) (emphasis added).  Plaintiff argues that the ALJ improperly reached a medical conclusion that Plaintiff's condition had improved.  He did not reach such a conclusion.  Rather, in assessing Plaintiff's overall credibility, the ALJ properly found that Plaintiff's decision to discontinue treatment suggested that she did not believe that her mental health symptoms were severe enough to warrant continued treatment.  See Stimpson v. Astrue, No. 10-30193-KPN, 2011 WL 6132025 at *6 (D. Mass. Dec. 1, 2011) (voluntary cessation of mental health treatment support an adverse credibility determination).  Plaintiff has shown no error.

Finally, Plaintiff contends that the ALJ erred by favoring the opinions of the non-examining, reviewing consultants over the opinions of her treatment sources.  It is undisputed that the ALJ

-18-

primarily based his RFC assessment on the findings of Dr. Slavit, a psychologist, and Dr. Bennett, a medical doctor. (Tr. 22).

As to Dr. Slavit, Plaintiff contends that the ALJ should have given substantial weight to Dr. Andriulli's opinion that she could not work over the non-treating opinion of Dr. Slavit. On July 3, 2012, Dr. Andriulli noted that Plaintiff's symptoms were "escalating" and will "grossly impair her ability to find employment along with the problem with her back injury." (Tr. 424). He did not restrict Plaintiff from working or opine that she was unable to work. He found a "gross impairment" in her "ability to find employment."[3]   However, Dr. Andriulli never provides any functional assessment of what Plaintiff can or cannot do as a result of her impairments. Furthermore, Dr. Slavit rendered his RFC assessment on March 6, 2013 and thus had the benefit of reviewing all of Dr. Andriulli's treatment notes prior to rendering his opinions. The ALJ properly weighed the evidence, and Plaintiff has shown no error either in his review of Dr. Andriulli's treatment notes or his assignment of weight to Dr. Slavit's RFC assessment.

Plaintiff also alleges error in the ALJ's treatment of Dr. Zeller's opinions with respect to her physical impairments. First, Plaintiff suggests the ALJ overlooked treatment notes dated May 8, 2012; May 16, 2012; September 13, 2012; June 11, 2013; June 18, 2013; July 16, 2013 and October 10, 2013. (Document No. 21-1 at p. 13). Once again, Plaintiff fails to argue how the ALJ's consideration of the purportedly overlooked records would assist her in carrying her burden of proving she was disabled. Instead, she calls the ALJ's analysis "improper" and states, in conclusory fashion, "Dr. Zeller in particular found that the Plaintiff was unable to work due in part to her long established back injury." Id. at pp. 13-14. The notes Plaintiff claims the ALJ overlooked are

---

[3]  Even if this were construed as a disability opinion, it is on an ultimate issue reserved to the Commissioner and not a "medical opinion" subject to the treating physician rule. 20 C.F.R. § 404.1527(d).

contained in Exhibits 16F and 18F.  (Tr. 432-469, 478-506).  But, Dr. Zeller's statement upon which

Plaintiff relies is contained in Exhibit 17F.  (Tr. 470-477).  The ALJ undisputedly discussed Exhibit

17F in great detail, and Plaintiff does not argue to the contrary.  (Tr. 22).  Further, a review of the

notes Plaintiff claims the ALJ overlooked demonstrates they do not support Plaintiff's position.

First, these notes do not contain an opinion that Plaintiff has an impairment that meets or equals a

listing.  (Tr. 432-469, 478-506).  Second, instead of discussing Plaintiff's physical impairments

found by the ALJ, these notes discuss Plaintiff's complaints of a cold and depression (May 8, 2012)

(Tr. 360-362), facial numbness (May 16, 2012) (Tr. 357-359), right buttock swelling and right foot

pain (September 13, 2012) (Tr. 463-466), abdominal pain and anxiety (June 11, 2013) (Tr. 441-445),

swelling, depression and nausea (June 18, 2013) (Tr. 436-438), and anxiety and left ankle pain (July

16, 2013) (Tr. 432-435).  Therefore, Plaintiff's argument fails because the conclusion she suggests

the ALJ should have drawn from the allegedly overlooked notes is not even supported by those

notes.[4]

 Plaintiff also argues the ALJ should have afforded substantial weight to Dr. Zeller's physical

RFC form.  (Document No. 21-1 at p. 14).  Dr. Zeller's physical RFC form imposed significant

functional limitations.  (Ex. 17F).  However, the ALJ was justified in affording Dr. Zeller's physical

RFC form "limited probative weight" because it was unsupported by objective medical evidence,

was conclusory, and was inconsistent with other evidence in the record.  (Tr. 22); see Ferrazzano-

---

[4] Plaintiff also claims the ALJ overlooked treatment notes of Dr. Grillo.  (Document No. 21-1 at p. 13).  She does not explain how Dr. Grillo's notes support her burden, and her argument fails for the same reasons as with Drs. Andriulli and Zeller.  First, the ALJ's discussion of the medical evidence is thorough and supported by substantial evidence.  Second, Dr. Grillo's purportedly overlooked notes do not support Plaintiff's position.  Specifically, these notes do not opine Plaintiff meets or equals a listing, and instead, discuss Plaintiff's swollen glands and right foot pain.  (Tr. 495-498).  While one of Dr. Grillo's notes reference Plaintiff's back and SI joint pain (Tr. 489-492), a later note indicates Plaintiff had no spinal tenderness.  (Tr. 495-496).

Mazza v. Colvin, 2015 WL 4879002 at *10 (D.R.I. 2015) (citing Keating, 848 F.2d at 275-276); see

also Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (lesser weight afforded where

treating source's opinion was "a brief list of checked answers to form questions unaccompanied by

explanation").  The majority of the limitations imposed on Dr. Zeller's physical RFC form are via

check-box answers.  (Tr. 470-475).  What is more, despite being asked to identify the particular

medical or clinical findings supporting her limitations, Dr. Zeller failed to provide support for her

lifting/carrying limitations, sitting/standing/walking limitations, postural limitations, environmental

limitations or physical impairments. Id.  Although Dr. Zeller did include her reasoning for imposing

limitations on Plaintiff's use of her hands, that reasoning included "edema in legs[ ] [and] difficulty

with mobility." (Tr. 472). (emphasis added).  Thus, her justifications fail to support her limitations.

Accordingly, Dr. Zeller's physical RFC form is conclusory and unsupported as the ALJ found.  The

ALJ was only required to afford the proffered limitations "such weight as is supported by clinical

or laboratory findings and other consistent evidence of a claimant's impairments."  Ferrazzano-

Mazza, 2015 WL 4879002 at *11.  The ALJ did so here.  Specifically, the ALJ found Dr. Zeller had

an abbreviated treatment history with Plaintiff and based her assessment largely on Plaintiff's

subjective complaints (complaints the ALJ found not entirely credible).  (Tr. 21-22); accord 20

C.F.R. § 404.1527(c)(2)(i) (permitting consideration of length of treatment relationship); Jette v.

Astrue, 2008 WL 4568100 at *16 (D.R.I. 2008) (opinion based upon subjective complaints that ALJ

did not find credible appropriately rejected).  The ALJ further found that Dr. Zeller's assessment was

inconsistent with Plaintiff's normal physical exam findings and modest clinical diagnostics test

results.  (Tr. 21); see 20 C.F.R. § 404.1527(c)(4) (permitting consideration of the consistency of the

opinion "with the record as a whole").  In addition, to the extent she opined on Plaintiff's mental

limitations, the ALJ appropriately observed Dr. Zeller is not a specialist in the mental health field and lacked the "qualifications to state the claimant's depression is debilitating." (Tr. 22); see 20 C.F.R. §404.1527(c)(5) (permitting ALJ to consider "specialization of the source"). Accordingly, the ALJ's conclusions are supported by substantial evidence.

Finally, Plaintiff argues the ALJ failed to properly consider the effects of her obesity on her impairments. (Tr. 14-15). This argument is completely without merit. The ALJ found Plaintiff's obesity was a severe impairment. (Tr. 15). The ALJ also specifically stated that he considered Plaintiff's obesity pursuant to SSR 02-1P, 2002 WL 3468628 at *3-7 (Sept. 12, 2002). (Tr. 16). Moreover, throughout his decision, the ALJ indicated he was considering all of Plaintiff's "medically determinable impairments." And, when assessing Plaintiff's RFC, the ALJ relied upon the opinion of Dr. Bennett who accounted for Plaintiff's obesity in his RFC assessment. (Tr. 22; see Tr. 89). Plaintiff's argument is wholly conclusory, and provides no support for her claim that the ALJ did not properly consider her obesity. Further, she fails to point to any medical evidence supporting that her obesity should have compelled a more-limiting RFC. Plaintiff has shown no error.[5]

## VI.     CONCLUSION

---

[5] Plaintiff contends that the ALJ erred at Step 2 by not finding her asthma to be a severe impairment. The ALJ based his conclusion on the limited record of treatment for such condition, her continued smoking habit, her reported lack of acceptable performance on pulmonary function tests, and the absence of any evidence of any significant functional limitation secondary to asthma. (Tr. 15-16). The ALJ's conclusions are supported by the record, and Plaintiff has shown no error. However, even if error were shown, it would be harmless since the ALJ assessed an RFC for a limited range of light work and even adding the standard environmental limitation for respiratory impairments would not have resulted in a disability finding. (Tr. 24, 54-55).

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (Document No. 21) be DENIED and that Defendant's Motion to Affirm (Document No. 23) be GRANTED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


　/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 29, 2016